<pre>
 1                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF OHIO
 2                     EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        Case No. 1:11cr4
                                       Akron, Ohio
 4              Plaintiff,             Tuesday, March 13, 2012

 5         vs.

 6    ERIC TUTSTONE,

 7               Defendant.

 8
                      TRANSCRIPT OF PROCEEDINGS
 9           BEFORE THE HONORABLE JOHN R. ADAMS
                 UNITED STATES DISTRICT JUDGE
10

11                    SENTENCING HEARING

12

13    APPEARANCES:

14    For the Government:        Duncan T. Brown
                                 Assistant United States Attorney
15                               Northern District of Ohio
                                 Suite 400
16                               801 Superior Avenue, W
                                 Cleveland, Ohio  44113
17                               216-622-3933

18
      For the Defendant:        James Kersey
19                               1350 Standard Building
                                 1370 Ontario Street
20                               Cleveland, Ohio  44113
                                 216-241-3470
21

22

23

24

25
</pre>

1

2

3     Court Reporter:              Lori Ann Callahan, RMR-CRR
                                  United States District Courthouse
4                                 Room 568
                                  2 South Main Street
5                                 Akron, Ohio  44308
                                  (330) 819-8676
6

7

8

      Proceedings recorded by mechanical stenography, transcript
9     produced by computer-aided transcription.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                      P R O C E E D I N G S
2                              -  -  -
3
4                 THE COURT:  Please be seated, ladies and
5      gentlemen.
6                 For the record, the court has before it today
7      Case Number 1:11cr04.  Case is United States of America
8      versus Eric Tutstone.
9                 We're here today for purposes of sentencing.
10                Counsel for the government, you ready to
11     proceed?
12                MR. BROWN:  Yes, the government is ready.
13     Good morning, Your Honor.
14                THE COURT:  On behalf of the defendant?
15                MR. KERSEY:  Yes, I am, Judge.  Thank you.
16                THE DEFENDANT:  Excuse me, Your Honor.  Did
17     you get my notice and my motion?
18                THE COURT:  What notice and motion are you
19     referring to, sir?
20                THE DEFENDANT:  Not being represented by
21     Mr. Kersey.
22                THE COURT:  And what reasons do you have for
23     not wishing Mr. Kersey to represent you?
24                THE DEFENDANT:  For various reasons, Your
25     Honor.  Mainly because I'm not satisfied with his
```

1     performance at trial, and I am -- he's going to be one of my

2     reasons for my appeal.

3               THE COURT: Uh-huh.

4               And what is it specifically that causes you

10:09:32  5     concern?

6               THE DEFENDANT: There was issues that was not

7     raised during trial that should have been raised. Also,

8     there was evidence that was not admitted to trial also.

9               THE COURT: Well, that's a matter, sir, we can

10:09:45 10    address, or will address, I am sure, either on appeal or by

11    way of what's called a 2255.

12              I am -- the issue before me is whether or not

13    Mr. Kersey can effectively represent you for purposes of a

14    sentencing hearing. And that is what I am interested in

10:10:00 15    hearing from you, is what, if any, reason you have that

16    Mr. Kersey can't effectively represent you for purposes of

17    this proceeding.

18              THE DEFENDANT: Well, I'm not confident with

19    proceeding because of his performance during trial, Your

10:10:16 20    Honor.

21              THE COURT: Mr. Tutstone, I am constrained to

22    believe that -- perhaps there really isn't any problems with

23    Mr. Kersey. It's just an ongoing problem, sir, with all due

24    respect. This is the fourth attorney that's been appointed

10:10:29 25    to represent you. All of them, without fail, have been

1    skilled practitioners, who have appeared before me on

2    numerous occasions and have done an outstanding job, and

3    none of them -- you've not been satisfied with any of them

4    or with any of their work on your behalf.  And you haven't

10:10:45  5    been happy with perhaps the advice that they have given you

6    with regard to this matter.

7              So, at this point, sir, with all due respect,

8    four attorneys, all, again, very capable practitioners here

9    in federal court, and state court in some respects, and none

10:11:01  10    of them have satisfied you.  So I'm not really inclined,

11    unless I hear some specific reasons why Mr. Kersey cannot

12    represent you, I'm not really inclined to remove him or ask

13    him to step down and appoint someone else with whom you can

14    then be unhappy with.

10:11:17  15              THE DEFENDANT:  Well, with all due respect,

16    Your Honor, Mr. Kersey, I am sure, is an adequate lawyer,

17    but I know for a fact that he did not represent me to his

18    best capability during trial.  Therefore, I don't believe he

19    will artfully argue any arguments that I have at sentencing.

10:11:37  20    For one, there's not much in his memorandum to help support

21    any of the issues that I want to be raised here at

22    sentencing.

23              THE COURT:  What hasn't he raised that you

24    wish him to raise?

10:11:51  25              THE DEFENDANT:  Well, there's variances from

1    the sentencing guidelines that should have been raised.

2    That should have been put in his memorandum.

3              THE COURT:  Why don't you be more specific,

4    because he submitted a memorandum which I've read.  Why

10:12:03  5    don't you be specific.  What is it that you think he should

6    have raised that he has not raised?

7              THE DEFENDANT:  That there are variances from

8    the sentencing guidelines, as well as the downward

9    departures, Your Honor.

10:12:13 10              THE COURT:  He's referenced both in his

11    memorandum.  He's outlined in the very beginning of the --

12    the caption of his motion or this memorandum is requesting a

13    variance departure.  And then he's argued for variance and

14    departure in his memorandum.

10:12:28 15              So he has made those arguments.  He's

16    referenced your so-called tragic personal history,

17    sociological factors, exposure to domestic violence.  He's

18    named any number of reasons why -- so unless I hear

19    something more specific from you, sir, then I am going to go

10:12:45 20    forward with the hearing, because we have gone round and

21    round with numerous attorneys to represent you, none of who

22    which have been able to satisfy you.  That's all it is, is

23    the question of satisfying you; and I am, quite frankly,

24    tired of the gamesmanship.

10:13:00 25              So unless I hear something specific, then

1    we're going to proceed and I will impose sentence in the

2    matter.

3              Mr. Kersey, do you wish to be heard, sir,

4    regarding the matter?

10:13:08 5              MR. KERSEY: Thank you, Judge. I just want to

6    clarify for the court, Judge, in the sentencing memorandum

7    and the objection to the PSI, I went down and met with my

8    client, Mr. Tutstone, and I took -- I took copious notes on

9    what his concerns were with respect to sentencing, his

10:13:29 10    concerns were and his wishes as to a variance/departure that

11    the court may entertain. We discussed that.

12              And all of what we have discussed, Judge, is

13    put in the sentencing memorandum. And I think Mr. Tutstone

14    is looking at it for the first time, although, he has access

10:13:49 15    online. Judge, indeed I did put it in there. I did request

16    it. I went through things that were -- that were I thought

17    legally sound based on case law, U.S. versus Lopez, Deigert.

18    I have them in the sentencing memorandum, Judge, if the

19    court would please.

10:14:02 20              And I did that to not only accommodate his

21    intentions and his wishes, but I also did it because I

22    thought there was a valid -- there was a valid issue there

23    with respect to his childhood upbringing, which is

24    encompassed in all of the four points, the four points that

10:14:23 25    I put in the memorandum, tragic personal history,

1    sociological factors, exposure to domestic violence.  The

2    defendant suffered extraordinary mental abuse as a child.

3              All of that, and I also asked the court if the

4    court would recommend -- be so kind for drug treatment,

10:14:36  5    because he is addicted to marijuana as it is in the PSI.

6              Other than that, I would rest on the

7    sentencing memorandum that the court has read.

8              THE COURT:  Have you been able to meet with

9    Mr. Tutstone and discuss the PSI?

10:14:49 10              MR. KERSEY:  Yes, we did, Judge.

11              THE COURT:  Have you reviewed it with him?

12              MR. KERSEY:  Yes, I did.  I read that -- we

13    went over there.  He's got a copy of it and, you know, it's

14    been highlighted and underlined and gone through it

10:15:01 15    completely.

16              THE COURT:  All right.  Mr. Tutstone, anything

17    further?

18              THE DEFENDANT:  Well, he just said, Your

19    Honor, that this is my first time seeing his memorandum, so

10:15:15 20    I don't know -- I want to apologize to the court for any

21    delays, but like he said, this is my first time seeing it,

22    and I do see that he does have all those things he just said

23    in the memorandum.  But unbeknownst to me, I did not know

24    this until this moment, Your Honor, so this was no attempt

10:15:34 25    to delay the court for any proceedings at all.

1    THE COURT:  Mr. Kersey, is this the first time

2    that Mr. Tutstone has been able to see the memo?

3    MR. KERSEY:  Judge, that's correct.  It was my

4    understanding that he has access online and that I did file

10:15:49  5    it.  That's correct.  He just read it and indicates that

6    indeed there is everything that he wants that we discussed

7    is in there, Your Honor.  That's true.

8    THE COURT:  Everything is in there?

9    MR. KERSEY:  Yes, according to my notes.

10:16:01  10    Would that be fair to say, what we discussed is in that

11    sentencing memo?

12    THE DEFENDANT:  Yes, it is.

13    MR. KERSEY:  Yes, it is, he says.

14    THE COURT:  Okay.

10:16:08  15    MR. KERSEY:  I applied that to the law and

16    also to his wishes, Judge.

17    THE COURT:  Mr. Tutstone, do you need some

18    time to read the memorandum?  It's three pages.

19    THE DEFENDANT:  Yes, sir.  I appreciate that,

10:16:16  20    Your Honor.

21    THE COURT:  Take a few moments.  You can

22    review it and read it, and we will go forward.

23    (Pause.)

24    THE DEFENDANT:  Thank you, Your Honor.

10:18:36  25    THE COURT:  All right.  You acknowledge that

1    you have -- Mr. Kersey has indicated that he did review with

2    you the presentence investigation report and you reviewed

3    that and discussed that with him as well?

4            THE DEFENDANT:  Yes, sir, Your Honor.

10:18:47  5            THE COURT:  All right.  The report sets forth

6    a number of objections, and just so it's clear for the

7    record, I will overrule the motion seeking to remove

8    Mr. Kersey and appoint new counsel.  There's been no reason

9    presented other than the defendant's unhappiness with the

10:19:03  10   ultimate outcome of his trial.

11           Those are matters that will yet be resolved

12   for purposes of appeal or through a 2255 potentially.  I

13   would just note as an aside, the defense of the matter was a

14   challenge at best given the fact the government was armed

10:19:21  15   with audio and video recordings that clearly established, at

16   least in my view, made it much more likely a conviction

17   would be had, and clearly made it much easier for the

18   government to establish the defendant's guilt in this case.

19           It's difficult for any defendant to overcome

10:19:40  20   what was presented here in court, that being the audio and

21   video recordings that clearly established, in my mind, his

22   guilt in this case, and to combat same, made it very

23   difficult for counsel.

24           So in any event, and just note for the record,

10:19:53  25   Mr. Kersey is the fourth attorney that's been appointed to

1      represent this defendant.  He has been unhappy with all of

2      them, and I've honored his wish in the past for appointment

3      of new counsel.  But there's been no sufficient grounds or

4      basis for the court to remove Mr. Kersey, no sound reasons

10:20:09  5      given why he cannot continue to represent the defendant at

6      sentencing.

7                    Indeed, he has done his job, and that is,

8      reviewed the PSI, filed objections, and filed the

9      appropriate memoranda seeking a departure and/or variance.

10:20:22 10                    So having said that, we will turn to any

11      unresolved objections, and then we will address the balance

12      of the issues before the court regarding the sentencing

13      hearing.

14                    The first objection is set forth in paragraph

10:20:36 15      1 on page 25.  This objection, as well as many, are

16      objections that relate to the probation officer's review of

17      the evidence and/or the offense conduct that relates to

18      paragraph 8, paragraph 10 and paragraph 11.  All of those

19      are the objections set forth on paragraph 25, as well as

10:21:07 20      paragraph 12, excuse me, paragraph 4 referencing paragraph

21      12, as well as the other remaining objections that are set

22      forth at pages 25 and 26.  All of the objections are, in

23      essence, to the probation officer's recollection or

24      restatement of the offense conduct, of course, which the

10:21:29 25      defendant disputes in large part.

1     I need not resolve these objections, simply

2     because the offense conduct as outlined has been established

3     for the benefit of the jury.  The jury has heard the

4     evidence, has found the defendant guilty beyond a reasonable

10:21:45  5     doubt.  And so while the defendant may maintain his

6     innocence and maintain his disagreement with the facts, the

7     jury has so found and, therefore, I need not resolve these

8     objections.  And they are overruled based on the jury's

9     finding in the matter.

10:22:01  10     Having said that, counsel for the government,

11     are there any objections you wish to raise, any unresolved

12     objections at this time?

13     MR. BROWN:  None, Your Honor.

14     THE COURT:  Any further objections on behalf

10:22:13  15     of the defendant, Mr. Kersey?

16     MR. KERSEY:  None at this time, Judge.

17     THE COURT:  All right.  The court obviously is

18     required to hear from the victim, and I know there has been

19     a statement obtained from the victim.  Counsel, is the

10:22:28  20     victim present or her mother, or do you wish me to simply

21     rely upon the victim impact statement that has been

22     submitted as part of the presentence investigation report?

23     MR. BROWN:  The government would respectfully

24     ask you to rely upon the submitted paperwork.

10:22:46  25     THE COURT:  All right.  Thank you.

1          Mr. Kersey, you, of course, received in the

2   PSI a reference to the victim and the statements from her

3   mother regarding the harm done to her by this crime and by

4   this defendant's conduct.

10:23:01  5          MR. KERSEY:  Whatever is reflected in the PSI,

6   Judge, we reviewed that.

7          THE COURT:  All right.  Thank you.  With

8   regard to any statement you wish to make on behalf of the

9   defendant, Mr. Kersey?

10:23:11 10          MR. KERSEY:  Judge, the only statement that I

11   would say, Judge, is I would ask the court to take into

12   consideration the sentencing memorandum on this.  His

13   criminal history is low on this.  Judge, he regrets what he

14   did, and I assure you that this was his first foray into

10:23:27 15   this type of activity.  He has a lot of misdemeanors and has

16   a lot of traffic, but this sort of thing is his first

17   encounter.

18          What's reflected in the sentencing memorandum

19   is our position on it.  I would like the court, if the court

10:23:38 20   would be so kind, to consider what is in the sentencing

21   memorandum, grant a departure, and allow him -- recommend

22   drug treatment pursuant to the appropriate code section I've

23   cited.  Thank you, Judge.

24          THE COURT:  All right.  Thank you.

10:23:55 25          Counsel for the -- I am sorry, before we hear

14

1    from the government's counsel, Mr. Tutstone, what, if any,

2    statement do you wish to make on your own behalf?

3              THE DEFENDANT:  Yes, sir, Your Honor, I

4    appreciate that.

10:24:07  5              When I first was arrested for this, I had a

6    lot of regrets, one mainly being that I missed Shannon

7    Jones, but then I realized I should have regretted meeting

8    her at all, because when I did meet her, the girl was

9    distraught and she was contemplating suicide.

10:24:27  10              And during conversations with -- that I had

11   with the young lady, she told me that I made her feel better

12   about herself and she was no longer contemplating suicide.

13   So I don't regret that I ever met her, because just the

14   conversation I had with her might have saved her life.

10:24:44  15              I can say also, Your Honor, that this

16   experience has been -- has been a deterrent for me to

17   conduct or participate in any crime in the future.

18              And I do -- I wish the court would take into

19   account that this is my first time of any offense like this.

10:25:08  20   And also there was no weapons involved.  There was no -- no

21   one harmed.

22              And also, Your Honor, I just ask that you be

23   lenient with me when you impose your sentence.  Thank you.

24              THE COURT:  All right.  Thank you.

10:25:27  25              Counsel for the government, what's the

1    government's position.

2              MR. BROWN:  Thank you, Your Honor.  The

3    government would request actually, and recognizing that the

4    guidelines range is 120 to 135, an upward departure to 15

10:25:39  5    years here, Your Honor.

6              The government argues that the facts in this

7    case warrant an upward departure to reflect the seriousness

8    of the offense.

9              THE COURT:  Or a variance?

10:25:50 10              MR. BROWN:  Variance.  That's correct.  I'm

11    sorry.

12              THE COURT:  If I were to consider a departure,

13    I would need to give the defendant more notice than --

14              MR. BROWN:  I am sorry, Your Honor.  I

10:25:59 15    misspoke.  A variance.

16              Your Honor, we base that request on the fact

17    that the case started when the defendant approached the

18    victim on this street because she appeared vulnerable, and,

19    in fact, the defendant's own words and statements today

10:26:16 20    reflect that, that he saw a person who looked vulnerable and

21    he approached her.

22              THE DEFENDANT:  I never said I saw a person

23    that looked vulnerable.

24              THE COURT:  Sir, don't interrupt.  You've had

10:26:26 25    your opportunity.  Don't interrupt.  It's the government's

1    opportunity to speak.  Do you understand me?

2                    THE DEFENDANT:  That's not fair, though, Your

3    Honor.  He's saying something that I did not say.

4                    THE COURT:  Listen, sir, I've got the benefit

10:26:37  5    of a court reporter here.  If there's a problem, I will go

6    back and review it.  You be quiet.  You sit quietly.

7                    Candidly, I have to consider your conduct, and

8    even your conduct as you sit here in court might have an

9    affect on your sentence.  So sit quietly.  Understood?

10:26:55 10                    THE DEFENDANT:  Yes.

11                    THE COURT:  Yes, sir.  Go ahead.

12                    MR. BROWN:  Thank you, Your Honor.  It was not

13    a pre-established relationship.  It was not a situation

14    where the victim sought out the defendant.

10:27:05 15                    Furthermore, the defendant introduced the

16    ideas of phone sex to the victim.  This, again, was not an

17    idea that she was actively pursuing or actively seeking out.

18    And he did it, I believe the record will reflect and the

19    evidence reflects, that while he was in contact with the

10:27:19 20    madam, that this was part of a larger ongoing sort of scheme

21    that he had with this girl, and the government would argue

22    that it was an overall intent to lure the victim into the

23    world of prostitution by the defendant.

24                    And we rely on the statements between the

10:27:37 25    madam and the defendant, but also the defendant's own words

1      to the madam, on the stand and to the FBI.  You know, on the

2      tapes he says that he had a history of managing prostitutes

3      in Philadelphia.  He said he was in the game in

4      Philadelphia, and he was telling this to the madam.

10:27:54  5                  Also, there's just -- in the statements to the

6      FBI and in the presentence report, this -- I don't know how

7      to characterize it -- this assertion that he's living with

8      women and women take care of him and he has this need for

9      women to take care of him.  There's this willingness to

10:28:12  10     exploit people for his own gain.

11                  The government would argue that this is

12     behavior of somebody who's not just an accidental tourist in

13     the world of prostitution.  This person is looking for a way

14     back into prostitution with a predator in relation to the

10:28:29  15     victim.

16                  He knew the victim's age from the beginning.

17     He preyed on her.  He manipulated her for his own purposes

18     and own gain.

19                  Very briefly about his criminal history.

10:28:38  20     There are allegations of domestic violence, and while the

21     defense counsel is correct that there are no patterns of

22     ongoing felonies and recidivist felonious behavior, there is

23     sort of a consistent law-breaking tendency of the defendant,

24     and I think that's relevant in this case, because it's just

10:28:57  25     part and parcel of his ongoing unwillingness to follow the

1    rules of society at a fairly basic level.

2         It shows all in all, the government would

3    argue, a lack of ability to rehabilitate or even a

4    willingness to do so.  Even in his presentence report, he

10:29:10    5    said that he smoked marijuana daily.  Even if he got

6    treatment, he would go back to smoking it daily.

7         So although the defense asks for treatment,

8    the government would argue that that sort of treatment comes

9    with a tremendous benefit, and the government has endorsed

10:29:25   10    drug treatment before in the past for certain defendants,

11    and those are defendants who approach that sort of treatment

12    and that sort of benefit with an open mind and with clean

13    intentions and not somebody who says, "Yeah, I will go back

14    to smoking dope once I'm out of jail and once I'm done with

10:29:42   15    probation."

16         All in all, the request for an upward variance

17    is based on the fact that this is a child victim who he

18    sought out for prostitution and actually sold.  This was not

19    discussed.  He actually sold the victim for, what he said on

10:29:57   20    tape, for pocket change.  That's how he described the

21    transaction, it was for pocket change.

22         There's, I think the government would argue, a

23    complete lack of acceptance still to this day, or

24    acknowledgement even of his -- the wrongfulness of his

10:30:14   25    actions.  It's just an attempt to relitigate his points to

1    minimize or to shift blame.

2              For that reason, Your Honor, we are asking for

3    the upward variance for 15 years, and we would ask for the

4    maximum 5 years' post-supervised release after.  Thank you.

10:30:34  5              THE COURT:  For the record, the court should

6    note, as well, and I should go back and make certain that

7    I've addressed the issue of the advisory guidelines.

8    There's a recommended advisory guideline range set forth in

9    the report.  It's encompassed on pages 6 and 7 of the

10:30:52 10   presentence investigation.

11             The base offense level is 30, beginning at

12   paragraph 22, the bottom.  There are no adjustments for

13   acceptance of responsibility or any other adjustments that

14   are appropriate.  The total offense level, therefore,

10:31:09 15   becomes a level 30.

16             Based on the defendant's criminal record, even

17   though it is lengthy, many of the convictions do not score

18   because of age and other reasons.  His criminal history

19   category becomes a II.

10:31:25 20             The advisory guideline range at offense level

21   30, Criminal History Category II on Counts 1 and 2 is 120 to

22   135 months.  There's a mandatory minimum of ten years to

23   life is the statutory provisions.  But guidelines, 120 to

24   135 months is the advisory range.  And there is, on Counts 1

10:31:52 25   and 2, not less than five years to life for a term of

1    supervised release.

2              Counsel for the government, do you have any

3    objection to the court's advisory guideline calculation?

4              MR. BROWN:  No, Your Honor.

10:32:05  5              THE COURT:  On behalf of the defendant?

6              MR. KERSEY:  Judge, I was looking at 30 and

7    II.  I have 108 to 135.  I'm sorry.  That's what I had.  I

8    was looking at this and --

9              THE COURT:  The 108 to 135, the reason that

10:32:27 10   there's 120 is where we begin is because the mandatory

11   minimum is ten years.

12              MR. KERSEY:  I understand that, Judge.

13              THE COURT:  That becomes the mandatory.

14              MR. KERSEY:  I understand.

10:32:35 15              THE COURT:  It's 120 to 135 months.

16              Any further objection, if any, to the

17   guideline calculations?

18              MR. BROWN:  No, Your Honor.

19              THE COURT:  Mr. Kersey?

10:32:46 20              MR. KERSEY:  No, Judge, I understand.

21              THE COURT:  All right.  Thank you.  Anyone

22   else wish to be heard?

23              Mr. Kersey, do you wish to respond to anything

24   the government's attorney had to say?

10:32:53 25              MR. KERSEY:  Judge, just briefly.  He's

1    talking about a worldwide -- this girl being sold worldwide.

2    There's no testimony in the trial.  The court can recall

3    that.  There's none whatsoever.  He has no prior convictions

4    or any involvement in prostitution.  What he said at trial

10:33:08    5    at -- I don't know if I remember that, but there was no --

6    there certainly isn't any criminal history indicating that

7    he was involved in that, either convicted or arrested on

8    that.  And as far as the treatment, this treatment program

9    is designed for something like him.  He's never been to a

10:33:23   10    treatment facility before, and --

11                   THE COURT:  Treatment for what?

12                   MR. KERSEY:  For drug addiction, marijuana.

13    Judge, he has -- he says he has that.  The treatment would

14    be for marijuana smoking that's reflected in the PSI.

10:33:36   15                   And in addition to that, the entire matter

16    involved a girl, unfortunately.  There's criminal conduct

17    here definitely, but it involved only Cuyahoga County,

18    Judge.  That's all I have to say.

19                   THE COURT:  All right.  Thank you.  For the

10:33:52   20    record, the court would note that I have carefully

21    considered the matter.  I am required to impose a sentence

22    that's sufficient, but not greater than necessary, to comply

23    with the purposes of the sentencing statute.

24                   I will go through and make a finding, and also

10:34:05   25    will address the defendant's arguments for both departure

1    and/or variance.  I will also address the government's

2    request for an upward variance to 15 years at 180 months.

3              The nature and circumstances of the offense

4    are that the defendant sold a minor to a known madam for

10:34:24  5    monetary gain.  The defendant believed the minor was to be

6    used in her phone sex business or for phone sex.  That is

7    the defendant's position.  But at the time the deal was

8    made, the defendant was misinformed that this minor was

9    intended to be used not only for phone sex, but also for sex

10:34:45 10    with adult men.

11             And I believe the evidence is overwhelming in

12    that regard.  The audio and videotapes clearly established

13    that the defendant was on notice for the full intent of this

14    madam for the use of this young teenager.

10:35:01 15             History and characteristics of the defendant,

16    his prior record, violence, physical abuse, diminished

17    capacity, employment, substance abuse and family ties.  The

18    defendant is 44 years old.  His parents are deceased.

19             Defendant described his childhood as rocky and

10:35:16 20    unsettled.  He has two brothers with whom he has an

21    estranged relationship, according to the report.  The

22    defendant's sisters reside in Cleveland, and he stated they

23    enjoy a familial relationship, but they do not spend much

24    time together.

10:35:29 25             The defendant has never married, but has four

1    children, ages 24 -- two purportedly age 24, an 18-year-old

2    and an 11-year-old from four past relationships.  His

3    youngest child resides in Cleveland, Ohio with her mother.

4    The defendant stated his youngest daughter is very upset

10:35:50  5    with him because she was planning to live with him just

6    prior to his arrest.

7              The defendant appears to be in good physical

8    condition, has no evidence of diminished capacity.  He has a

9    history of violence in his prior relationships as reflected

10:36:04 10    in domestic violence relationships, domestic violence

11    charges and other police contacts for domestic violence

12    and/or harassment.  His youngest child resides in Cleveland

13    with her mother, as I've already indicated.

14              The defendant has admitted to smoking

10:36:21 15    marijuana daily at the time of his arrest.  He is amenable

16    to treatment during any period of custody as well as during

17    supervision, and has reported receiving his GED in 1986,

18    which has not been verified.

19              The defendant's employment history, according

10:36:36 20    to him, includes detailing vehicles and working with various

21    contractors since 2007, as well as a long history as a

22    security guard, although none of that has been verified.

23              The defendant's criminal history is extensive.

24    It includes dismissed cases.  The defendant has been cited

10:36:52 25    for driving without a valid driver's license a total of 27

1    times and convicted 15 times of the same.

2              He has two prior convictions, and two prior

3    dismissed cases for domestic violence.  Including those four

4    cases, he has a total of 12 contacts with police for

10:37:11  5    domestic violence and/or harassment, and the facts of those

6    convictions are outlined in the PSI and would certainly lead

7    one to believe this defendant has a violent history when it

8    comes to women, physical contact with them.  And you can

9    look at the report itself and can learn those facts, as I

10:37:32  10    have done in referring to the PSI.

11              The defendant has been arrested or ticketed or

12    under investigation a total of 58 times in reference to

13    criminal matters, including the 27 traffic infractions.

14    Most of his criminal history record does not score due to

10:37:50  15    age, excluding offenses with no convictions.  The defendant

16    has had a total of 24 convictions since the age of 21, and

17    has only served approximately 155 days for all of these

18    various convictions.  So he has received little or no

19    sanction for his prior involvement with the law.

10:38:09  20              I think it is somewhat telling, and I will

21    just note for any reviewing court, to review the

22    circumstances of the domestic violence cases.  They involve,

23    again, violence against these particular women, and the

24    physical contact is outlined, which, of course, gives rise

10:38:31  25    to the court's concern about this defendant and his risk of

1     harm to others, as well as his general relationships with

2     women.

3                    As I've already outlined, the need for the

4     sentence -- before I address the need for the sentence

10:38:46  5     imposed, there is a guideline range of 120 to 135 months.

6     There will be at least five years of supervised release, and

7     of course, there is no probation.

8                    There is an argument for a variance by the

9     government, which I will address for a moment.  There's an

10:39:02 10     argument for a variance by the defendant in the memorandum,

11     outlined his so-called tragic personal history, so-called

12     sociological factors, exposure to domestic violence, and

13     supposedly the defendant suffered extraordinary mental

14     abuse.

10:39:19 15                    I will consider those arguments.  They are

16     unverified, and given the manipulative nature of this

17     defendant and given, at least in my view, his willingness to

18     shade the truth or to tell half-truths based upon his

19     testimony at trial and, in essence, his willingness to deny

10:39:37 20     the obvious, I have grave doubts about the accuracy of some

21     of this information, alleging the rape of one of his sisters

22     by his father and other such actions.

23                    The defendant allegedly being exposed to

24     domestic violence.  The defendant having drug-related

10:39:55 25     issues, marijuana.  I would suspect 90 percent of the

1    defendants we see here, perhaps 80 percent, have some

2    drug-related issues, and marijuana use, unfortunately, is

3    certainly rampant among various defendants and those

4    involved with the law.

10:40:13  5          That is certainly not an excuse, in my view,

6    for his use of marijuana.  His use of his prior upbringing

7    is not a basis for a variance, in my mind, as well as the

8    argument that this is abhorrent behavior.  I don't accept

9    that argument in any way.

10:40:29  10          The defendant, by virtue of his conduct in

11   this case, as reflected in the videotapes, it's clear to me

12   that he is certainly not new to the sex trafficking trade

13   and/or serving as a pimp for prostitutes.  It's clear to me

14   that he obviously has knowledge of the trade, and certainly,

10:40:48  15   as he's indicated, in some ways on the tape, he certainly

16   represents that he, in fact, is familiar with the game, if

17   you want to call it that.

18          So I have no doubts that this is not -- even

19   though he's never been convicted, I have no doubts that the

10:41:03  20   defendant is extremely skilled in manipulating young women,

21   including the victim in this case.

22          And I should note, and I will note when I

23   address the need for the sentence imposed, we cannot

24   overlook the victim in this case and the harm done to her by

10:41:17  25   this defendant.

1          The need for the sentence imposed, just

2     punishment, adequate deterrence, protect the public, reflect

3     the seriousness of the offense, improve the offender's

4     conduct and condition.  As I've noted, Mr. Tutstone has an

10:41:30  5     extensive criminal history.  There's an argument, of course,

6     he has not -- no previous convictions for an offense of this

7     nature.  These crimes are extremely difficult to prosecute.

8     The victims are extremely difficult to find many times.

9     They're unwilling to come forward.  They are embarrassed by

10:41:50 10     the conduct.  And it is a very difficult crime to prosecute.

11          Defendant has not accepted responsibility for

12     his actions.  He certainly is free to continue to argue that

13     he is innocent, but the evidence, in my view, is

14     overwhelming that indeed he is guilty of this offense.  And

10:42:06 15     I believe there's substantial evidence to support the fact

16     that he has made his living, in essence, in the sex trade as

17     either a pimp or, in essence, preying upon young girls,

18     along with this 17-year-old.

19          His substance abuse is no excuse.  Use of

10:42:21 20     marijuana doesn't drive one to become involved in the sex

21     trafficking trade.  Mental health counseling may or may not

22     be necessary depending upon -- it's difficult to ascertain

23     if he's amenable to same given his manipulative nature and

24     given how he attempts to mislead and the lack of candor

10:42:41 25     makes it difficult for any counseling, in my view, to be

1    successful.

2              The guideline range may be inadequate.  The

3    government makes a compelling argument; however, I will

4    decline to vary upward.  I will, however, impose a sentence

10:42:56  5    at the highest end of the guidelines, which will hopefully

6    provide adequate deterrence and protect the public.  This is

7    a high-risk offender.  This is an individual who, should he

8    be released, he will once again continue this conduct, in my

9    view, unless he is restrained and in custody for a long

10:43:13 10    period of time.

11              The victim in this case, as reflected in the

12    PSI, suffered from this defendant's conduct.  Her mother was

13    an individual who was a single mother, a single mom who was

14    working, maintaining full-time employment.  Her daughter was

10:43:30 15    attending school, and this defendant's preying upon this

16    child, and that is what she is, she is a child, she came

17    into court and testified, she's vulnerable, subject to being

18    easily preyed upon by an individual like Mr. Tutstone.

19              So it's clear to me that he certainly used his

10:43:48 20    skills and abilities to prey upon this young lady.  She is

21    continuing in counseling.  She needs that counseling.  And

22    she has -- of course, the adverse effects of this has

23    affected her education and will in many ways affect her

24    potential future.

10:44:03 25              So I cannot overlook the harm to the victim,

1    and I need to impose a sentence that will reflect the

2    seriousness of the offense.  This type of conduct, this type

3    of crime is becoming -- certainly has been well reported in

4    the media.  And with great frequency, sex trafficking is an

10:44:20  5    ongoing problem in our communities.  It is under-reported.

6    It is under-prosecuted, if I can use that term, simply

7    because of the difficulties in finding young women to come

8    forward, and also finding someone who is willing to assist

9    the government as the madam in this case was willing to do.

10:44:38  10         Even she, Mr. Tutstone, even a madam, someone

11   who had worked in the sex trade providing prostitutes, adult

12   prostitutes, even she was shocked by your willingness to

13   attempt to, in essence, sell this minor.

14         And so, therefore, for all of the reasons, as

10:44:57  15   tempted as I am to impose a much lengthier term of

16   imprisonment, I will decline to do so, and note for the

17   record, I've considered all of the arguments made in the

18   sentencing memoranda.

19         None of them are more compelling than the need

10:45:10  20   to deter this defendant, to keep him off the streets and

21   also to send a message to the public in general that this

22   type of crime will be dealt with harshly and appropriately.

23         So for all those reasons, pursuant to the

24   Sentencing Reform Act of 1984, and 18, United States Code,

10:45:28  25   Section 3553(a), it will be the judgment of the court that

1    the defendant will be imprisoned for a term of 135 months on

2    each count to be served concurrently and not consecutively.

3           Upon being released from prison, the defendant

4    will be placed on supervised release for a term of ten

10:45:43  5    years.  Five years is the mandatory, is the -- let me

6    restate that just so it's clear for the record.

7           It will be ten years.  As to Counts 1 and 2,

8    the mandatory minimum is ten years to life.  The supervised

9    release on Counts 1 and 2 is not less than five years to

10:46:09  10   life.  I will impose ten years on each count to run

11   concurrent.  I go far above the five years, because this

12   defendant, as I've indicated, is a high risk.

13          Supervised release is necessary for a lengthy

14   period of time, so that if indeed he returns to this trade,

10:46:22  15   indeed he will face a harsh sanction and a lengthy prison

16   term.  And he needs to be supervised for far more, in my

17   view, than the five years that has been the minimum.

18          In addition, the additional conditions that I

19   will impose as part of the court's sentence will be as

10:46:37  20   follows:

21          There will be no fine.  As I've said,

22   supervised release for ten years each on Counts 1 and 2 to

23   run concurrently.

24          Within 72 hours of release from custody of the

10:46:49  25   Bureau of Prisons, the defendant shall report in person to

1    the U.S. Probation Office in the sentencing district to

2    which the defendant is released.

3                    There is no fine.  There is no restitution.

4                    A special assessment of $200 shall be due

10:47:01 5    immediately.

6                    While the defendant is on supervision, he

7    shall not commit another federal, state or local crime,

8    shall not illegally possess controlled substances and comply

9    with the following additional conditions:

10:47:11 10                    Mandatory drug testing will be in place.

11   Defendant shall refrain from any unlawful use of a

12   controlled substance and submit to one drug test within 15

13   days of commencement of supervision, and at least two

14   periodic drug tests thereafter as determined by his pretrial

10:47:27 15   services officer.

16                    Defendant cannot possess a firearm,

17   destructive device or any dangerous weapon.

18                    Search and seizure will be in place.  The

19   defendant will be required to submit his person, residence,

10:47:39 20   place of business, computer or vehicle to a warrantless

21   search conducted and controlled by his U.S. Probation

22   Officer at a reasonable time and in a reasonable manner,

23   based upon reasonable suspicion of contraband or evidence of

24   a violation of a condition of release.  Failure to submit to

10:47:54 25   a search may be grounds for revocation.  And the defendant

1    shall inform any other residents that the premises may be

2    subject to a search pursuant to this condition.

3                 Drug treatment and testing.  Part of this

4    supervised release, if indeed he wishes drug treatment for

10:48:10 5    his admitted marijuana addiction, then obviously he will be

6    required and shall participate in any program which will

7    include drug and alcohol testing.

8                 He will be designated a sex offender, and

9    pursuant to 18, United States Code, Section 3583, he will be

10:48:26 10   required to register under the Sex Offender Registration

11   Notification Act and must comply with the requirements of

12   the act as directed by his probation officer.

13                Pursuant to the Adam Walsh Child Protection

14   Act of 2006, the defendant shall register as a sexual

10:48:41 15   offender not later than three business days from his release

16   from custody.  The defendant will keep the registration

17   current in each jurisdiction in which he resides, is

18   employed or is a student.

19                The defendant shall, no later than three

10:48:55 20   business days after each change in name, residence,

21   employment or student status, appear in person in at least

22   one jurisdiction in which he has registered and inform that

23   jurisdiction of all changes and reporting information.

24                Failure to do so may be a violation of his

10:49:10 25   conditions of supervised release and may be a new federal

1    offense punishable by up to ten years.

2              The defendant will participate in any

3    outpatient mental health treatment program.  I've already

4    touched on it, and that has been addressed earlier.

10:49:27   5              And, in addition, the defendant will abide by

6    all of the rules of the Minor Protection and Restriction

7    Program of the U.S. Pretrial Services and Probation Office.

8              The defendant shall submit to mental health

9    evaluation and sex offender assessment as directed by his

10:49:43  10   probation officer.  He will participate in any treatment

11   program, including for sexual deviancy, which may include

12   polygraph testing if recommended by these evaluations.

13             The defendant shall submit to periodic

14   polygraph testing as directed by his probation officer.  And

10:49:58  15   no violation proceedings will be based solely on the results

16   of a polygraph examination or a valid Fifth Amendment

17   refusal to answer a polygraph question.

18             The defendant shall not have any contact with

19   the victim or the victim's family, including letters,

10:50:12  20   communication devices, audio or visual devices, visits or

21   any contact through a third party without prior written

22   consent of the probation officer.

23             He will cooperate in the collection of DNA,

24   and his computer may be searched or the consent -- he will

10:50:31  25   consent to the U.S. Probation Office conducting periodic and

1    unannounced examinations of his computer, which may include

2    retrieval and copying of all memory from hardware, software

3    and/or removal of such system for the purpose of conducting

4    a more thorough inspection.

10:50:45  5            The defendant shall submit his person,

6    residence, place of business, computer or vehicle to a

7    warrantless search, as I've addressed earlier, conducted and

8    controlled by the U.S. Probation Office in a reasonable time

9    and in a reasonable manner, based upon reasonable suspicion

10:50:59 10   of contraband or evidence of a violation of a condition of

11   release.  Failure to submit to a search may be grounds for

12   revocation, and the defendant shall inform all of the other

13   residents of this condition.

14            Before I address appellate rights, under U.S.

10:51:16 15  versus Bostick, any objections, corrections, any arguments

16   that I haven't addressed that I may need to address before I

17   adjourn the sentencing hearing?

18            Counsel for the government, please?

19            MR. BROWN:  None from the government.  Thank

10:51:27 20  you, Your Honor.

21            THE COURT:  On behalf of the defendant?

22            MR. KERSEY:  Judge, thank you very much.  I

23   might have missed this.  Did the court rule on our request

24   for a recommendation for drug treatment?  I might have

10:51:41 25  missed it.

1          THE COURT:  I will note for the record that I

2     will not recommend drug treatment.  I will leave that to the

3     Bureau of Prisons.  The issue of marijuana, obviously he's

4     in custody.  He will not have the ability to obtain the

10:51:51  5     drug.  And, in fact, if the BOP feels that he requires some

6     use of marijuana -- or some treatment for marijuana, then

7     they can choose to do so.  But I will not recommend

8     treatment other than when he's released from custody, the

9     probation department can assist him in that regard.

10:52:06  10          I'm not convinced in any way that drugs are

11     related or his use of marijuana is in any way related to

12     this offense or that he has any ongoing problem that

13     requires the resources of the drug treatment program and the

14     BOP.

10:52:22  15          MR. KERSEY:  Thank you, Judge.

16          THE COURT:  All right.  Mr. Tutstone, you have

17     a right to have an appeal filed from the court's sentence,

18     and, obviously, from your conviction as well.  I will reduce

19     your sentence to writing.  There will be a written order.

10:52:32  20     Fourteen days from the date that order is issued will be the

21     time with which you will need to file your notice of appeal.

22          Mr. Kersey, I would ask you simply to file a

23     notice of appeal on his behalf, if you would, and we will

24     appoint other counsel for purposes of the appeal.

10:52:46  25          Are you able to do that for us?

1          MR. KERSEY:  Yes, sir, I will.

2          THE COURT:  All right.  And then we will --

3     either I or I will ask the circuit to appoint counsel for

4     purposes of your appeal, Mr. Tutstone.

10:52:57  5          THE DEFENDANT:  Thank you, Your Honor.

6          THE COURT:  Anything else on behalf of the

7     government?

8          MR. BROWN:  Nothing else.  Thank you.

9          THE COURT:  Sir?

10:53:02 10          MR. KERSEY:  Thank you, Judge.

11          THE COURT:  Thank you, Mr. Kersey, for your

12     work.  We appreciate your service to the defendant and

13     acting as a CJA counsel in the matter.

14          We will stand adjourned, please.

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3              I certify that the foregoing is a correct

4   transcript from the record of proceedings in the

5   above-entitled matter.

6

7

8              s/Lori A. Callahan
               Lori Ann Callahan, RMR-CRR
9              U.S. District Court, Suite 568
               2 South Main Street
10             Akron, Ohio  44308
               (330) 252-6022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25